UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

BRE-1, INC.
a Texas corporation,

    Plaintiff,

v.                                              Case No. 12-cv-00260 MV/KBM

CONQUEST SANTA FE LLC,
BRANDE EIGEN, THE ESTATE OF
MORRIS EIGEN/ BRANDE EIGEN AS
PERSONAL REPRESENTATIVE,
AMERICAN CONSTRUCTION CORP.,
BLUELINE CONSTRUCTION, INC.,
VIF DRYWALL, INC., KIMCON, INC.,
ROADRUNNER REDI-MIX, INC., KENYON
PLASTERING, INC., GRAHAM MECHANICAL, INC.,
TRI STATE MUSIC & VIDEO LLC,
THE RIM CORPORATION, and BRE-2, INC.,

    Defendants.

## STIPULATED ORDER APPOINTING RECEIVER

THIS MATTER came before the Court upon Plaintiff's Complaint for Collection of Note, Enforcement of Guaranties, Foreclosure of Deed of Trust and Appointment of Receiver, (the "Complaint"), the stipulation of BRE-1, Inc. ("Plaintiff") and Conquest Santa Fe LLC or its assignee or transferee ("Owner"), and the Court, being fully advised in the premises, finds:

1.     On March 13, 2012, LPP Mortgage Ltd. ("LPP") filed the Complaint, commencing this action.

2.     Pursuant to the Stipulated Order Permitting Substitution (doc. # 41) BRE-1, Inc. has been substituted for LPP as plaintiff and is now the Plaintiff and real party in interest.

3. As set forth in the Complaint, Plaintiff is the holder of a promissory note dated October 10, 2008, executed and delivered by Conquest Santa Fe LLC (as amended, the "Note") in the original principal amount of $9,585,824.00. True and correct copies of the Note and Change in Terms Agreement were filed with the Complaint as Exhibits A and B.

4. The Note matured on April 10, 2010 and is in payment default.

5. The Note is secured by a deed of trust dated October 10, 2008 (as modified, the "Deed of Trust") recorded with the Santa Fe County Clerk's office on October 21, 2008 as Document No. 1541751. A true and correct copy of the Deed of Trust was filed with the Complaint as Exhibit C. on real property located in Santa Fe County.

6. The subject property is in Santa Fe County, New Mexico. Venue is proper in this Court.

7. The property that is the subject of the Deed of Trust consists of the following:

> Tract B-2, as shown and delineated on plat of survey entitled "Plat of Tracts A-1, B-1 and B-2 Zarape Center City of Santa Fe County, New Mexico June 2008," filed on October 7, 2008, in plat Book 691, Pages 016-019, #1540466, , records of Santa Fe County, New Mexico.

with a street address of 4320 Cerrillos Rd., Santa Fe, New Mexico 87505 (the "Property"). The Property is operated as the "Hyatt Place Hotel."

8. Plaintiff is entitled to the appointment of a receiver as a matter of right, pursuant to the express terms of the Deed of Trust. The Deed of Trust provides:

> **Rights and Remedies on Default**. If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies.

> . . . .
>
> **Appoint a Receiver**. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

9. Applicable New Mexico law provides for the appointment of a receiver. See, N.M.S.A. §44-8-1 et seq. (1978). provides:

> Upon application to a district court, the district court *shall appoint* a receiver in an action by a mortgagee or secured party or in any other action based upon a contract or other written agreement, where such mortgage, security agreement, contract or other written agreement provides for the appointment of a receiver.

N.M.S.A. §44-8-4(A) (1978) (emphasis added).

10. Plaintiff and Owner consent to appointment of The Rim Corporation be as receiver.

11. The Rim Corporation is qualified to be appointed receiver in this action, is not otherwise disqualified under applicable law to administer the receivership estate, and has consented to appointment. See Consent to Appointment as Receiver filed in this action (doc. #42).

12. The proposed terms of the receiver's compensation are substantially as set forth herein, but are subject to negotiation and execution of any agreement with the court-appointed receiver.

13. No bond is required from the receiver.

14. The Court should appoint a receiver to preserve and administer the Property and to apply the revenues received from the Property, if any, first to the costs of the receivership, and then to the amounts owed to Plaintiff.

15. Plaintiff, as the lender, and the Owner are the only parties required to stipulate to entry of this order.

IT IS THEREFORE ORDERED, that:

1. <u>Appointment of Receiver</u>.  The Court appoints the Rim Corporation as receiver in this case (the "Receiver") for the Property to take control of the Property, together with all related documents, books, records, papers, and accounts of Owner, except for that operating account at Wells Fargo Bank, xxxxxx7739 (the "Operating Account"), to preserve, protect, secure and maintain the Property.  ,

2. Within 5 business days of the entry of this Order, the Owner shall transfer to the Plaintiff, by wire transfer, the Final Net Balance in the Operating Account, all as defined and provided in that Settlement Agreement dated as of September 30, 2013, between LPP and the Owner (along with others) ("Settlement Agreement"). The Court hereby takes judicial note of the terms of the Settlement Agreement, a copy of which is attached as Schedule 1 to that Joint Motion to Approve Settlement Agreement and for Stay Relief filed by the Owner and LPP in the Chapter 11 proceedings of the Owner in the United States Bankruptcy Court for the District of Arizona, Case No. 4:12-bk-24937-EWH (Docket No. 95) and which is incorporated herein by reference and made a part hereof.

1. The Property includes also all of the following, as to the Owner and as to the real estate described in the Deed of Trust, all whether now existing or hereafter

arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including, but not limited to, all insurance payments) of or relating to the foregoing property:

    a.    All inventory, equipment, accounts (including, but not limited, to all health-care-insurance receivables, but excluding the Operating Account), chattel paper, instruments (including, but not limited to, all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts (excluding the Operating Account), investment property, money, other rights to payment and performance, and general intangibles (including, but not limited to, all software and all payment intangibles);

    b.    All oil, gas, and other minerals before extraction;

    c.    All oil, gas, other minerals, and accounts constituting as-extracted collateral;

    d.    All fixtures;

    e.    All construction materials stored on site;

    f.    All attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of, and substitutions for all or any part of the foregoing property;

    g.    All insurance refunds relating to the foregoing property;

    h.    All good will relating to the foregoing property;

    i.    All records and data and embedded software relating to the foregoing property, and all equipment, inventory, and software to utilize, create, maintain, and process and such records and data on electronic media;

    j.    All supporting obligations relating to the foregoing property; and

          k.      All architect contracts and builder's contracts;

    2.      In furtherance of the foregoing, the Receiver is authorized to take possession of (a) all the books and records, ledgers, financial statements, financial reports, and all other business records, including, but not limited to, information contained on computers and any and all software and websites, and telephone or internet reservation systems (including toll free telephone numbers and all domain names) relating thereto (including user IDs and passwords); (b) all banking records, statements, budgets, rent rolls, personnel records, real estate tax bills, construction and other bonds, (c) all governmental agency permits and approvals, including without limitation, all liquor licenses, building permits and conditional use permits; and (d) all advertisements and marketing materials, plans, surveys, architectural, contractor and subcontractor agreements, and architectural and engineering drawings for the buildings and improvements, pertaining to the Property, wherever located, as the Receiver deems necessary for the proper administration, management or control of the receivership estate. The term "Receiver" includes any successor or substitute for the named Receiver. The Receiver shall have the discretion to engage others including associates and employees to perform receivership duties, subject to control and responsibility of the Receiver.

    3.      Within thirty (30) days of taking control and possession under this Order, the Receiver shall file an inventory itemizing all personal property of which he has taken control or possession and shall promptly file supplemental inventories of any personal property subsequently coming into the receivership estate as needed.

    4.      The Receiver is hereby authorized to hire, employ, retain, and terminate consultants, brokers, professionals, independent contractors, and any other personnel or

employees, which the Receiver deems necessary to assist him in the discharge of his duties, including without limitation, Byron Chapman, Kim Davis and Kyle Shepardson of The Rim Corporation, who shall be authorized to act on behalf of the Receiver as the Receiver's authorized representative, with the full force and power of the Receiver to carry out the duties and obligations of the Receiver as set forth herein, including without limitation, obtaining turnover, possession and control of the Property and all books, records and accounts of Owner (except the Operating Account) and any other receivership property in accordance with the provisions of this Order.  The Receiver is further authorized to retain legal counsel to represent him and assist him with the performance of his duties as set forth herein if the Receiver feels that legal counsel is reasonably necessary to assist with the performance of his duties hereunder.  All reasonable expenses incurred in connection with the hiring and retention of such personnel and counsel shall be expenses of, and paid for by, the Property.

     5.     Notwithstanding any provision in this Order to the contrary, Receiver does not assume and is not obligated to assume and will not be obliged to pay, perform or otherwise discharge any Employment-Related Liability (as defined below) of Owner.  Owner is and will be solely and exclusively liable with respect to all Employment-Related Liabilities.  Without limiting the generality of the foregoing, "Employment-Related Liabilities" includes all of Owner's liabilities to any former or current employee in any way related to the employee's employment with or separation from Owner, including, but not limited to, any claims: (a) for salary, wages, commissions, bonuses, benefits, vacation, or any other form of compensation; (b) arising out of any acts or omissions of Owner or any of their agents or representatives with respect to any benefit

plan, employee practices or employee programs, including employee claims of discrimination, retaliation or other wrongful conduct or discharge decisions; (c) severance liabilities; (d) obligations under employment contracts or any other related agreements with employees; (e) any change of control amounts payable to any employees; (f) all liabilities under the Worker Adjustment and Retraining Notification Act (WARN) 29 U.S.C. 2101 et seq., or similar state statute or regulation and (g) any other statutory or common law claim.

6. The Receiver may obtain and pay any reasonable price for any lawful license, including but not limited to a liquor license, and, to the extent permitted by law, exercise the privileges of any existing license issued in connection with the Property or any business transacted with respect to it, until further order of the Court, and to do all things necessary to protect and maintain said licenses, including, but not limited to, taking such license in the name of the Receiver personally or a nominee of the Receiver personally. With respect to any existing liquor license related to the Property, including, without limitation, any liquor license that may currently be held by Owner for the Property, the Receiver may promptly apply, if the Receiver deems it necessary or preferable, to the appropriate authorities to transfer the existing license or to obtain an amended or new liquor license to sell alcoholic beverages as an incident to the operation of the Property. All existing licenses relating to the operation of the Property, including but not limited to the alcohol and beverage license(s), issued in the name of Owner are hereby assigned to the Receiver. The Receiver is empowered to operate under the existing liquor license related to the Property.

7.      The Receiver, following advance notice in writing to Plaintiff and Owner, has the right to negotiate the terms of leases and contracts, including, without limitation, franchise agreements, contracts to provide security, janitorial, leasing, utility or other services including the hiring and terminating of staff and full time and part time employees related to the Property and to pay for those services as an expense of the Property.  Without advance written consent from Plaintiff and Owner, the Receiver shall not extend, terminate, modify, ratify or enter into leases and contracts that have a gross total value or expense to the Property in excess of five-thousand dollars ($5,000.00).  In accordance with the foregoing, the Receiver may negotiate the continuation, transfer and extension of the current, applicable franchise agreement (the "Franchise Agreement") in a form and substance satisfactory to the Receiver, Plaintiff, Owner and Franchisor.  At all times, the Receiver shall cause the Property to be operated in accordance with the terms of the applicable franchise agreement.  The Receiver must insure that the Property is operated in accordance with state, local, and federal laws, and maintained in accordance with the standards required by the Franchise Agreement.

8.      The Receiver may charge for his services a receivership fee of $2,000.00 per month.  The Receiver shall use primarily the services of his affiliated management company, Independent Hotels LLC (the "Management Company"), a wholly-owned subsidiary of The Rim Corporation, to manage the Property, and the fees payable to the Management Company shall be according to a separate written agreement with the Management Company, which Plaintiff shall have the right to review and approve, in Plaintiff's discretion, in advance, which may include:  a one-time start-up fee; a monthly management fee; and, a monthly accounting fee, all of which shall be payable on a per

diem basis.  In addition, the Receiver and the Management Company shall be reimbursed for all actual, reasonable and necessary expenses incurred for the benefit of the Property pursuant to the terms hereof.  The Receiver, the Management Company, Receiver's consultants, agents, employees, legal counsel, and professionals may be paid their respective actual, reasonable and necessary fees on a monthly basis for services that benefit the Property.  To be paid on a monthly basis, the Receiver must file a statement of account with the Court and serve a copy on Plaintiff and Owner each month for the time, charges, expenses, fees, applicable gross receipts taxes and other amounts incurred in the preceding calendar month.  The statements of account shall accompany the monthly reports filed and served by the Receiver pursuant to this Order.  Once the Receiver's statement of account has been filed and served, the Receiver may pay the statement from the cash generated by the operation of the Property.  The Receiver's receipt of interim fees is subject to final review and approval by this Court following advance notice of no less than fifteen (15) days to Plaintiff and Owner.  This Court retains jurisdiction to award a lesser amount as the full, fair, and final value of the Receiver's reasonable and necessary services.

9. The Receiver shall operate, lease, manage and control the Property, conduct its business and incur the expenses necessary in such operation, leasing, management, control, and conduct in the ordinary and usual course of business, and shall do all things and incur the risks and obligations ordinarily incurred by owners, managers, and operators of similar properties.  No risks or obligations incurred by the Receiver in the operation, leasing, management, control and conduct shall be the personal risk or obligation of the Receiver, but shall be a risk or obligation of the receivership estate.

10.     The Receiver is authorized to open and maintain checking and savings accounts and the like, in the name of the receivership estate, in a federally insured lending institution, and shall pay only those bills which are reasonable and necessary for the operation of the Property. The Receiver shall obtain Plaintiff's approval before making capital expenditures in excess of $5,000.00 per expenditure or payment of unsecured debt (other than ordinary and necessary trade accounts payable), or payments other than those ordinarily and necessarily incurred in the operation of the Property. After reserving sufficient funds as the Receiver deems reasonable in accordance with the approved operating budget, the Receiver may pay at Receiver's discretion or upon instructions from Plaintiff, any remaining amounts to Plaintiff to reduce the amounts due, owing and unpaid by Owner and reduce the accrual of interest on such amounts.

11.     The Receiver shall not be responsible for payment of any real property taxes, utility bills, unpaid payroll expenses or other unpaid invoices for services or utilities incurred by Owner, or their agents, or for the benefit of the Property before the Receiver's taking possession of the Property, provided, however, the Receiver is authorized to pay operating and other expenses of the Property incurred before the date of this Order if the payment is reasonably necessary or beneficial to enable the Receiver to continue to operate the Property as determined by the Receiver in Receiver's sole discretion, including, without limitation, utility bills dated before the date of this Order. Any utility company providing services to the Property, including gas, electricity, water, sewer, trash collection, telephone, communications, internet, pay per view television, satellite television, cable or similar services, shall be prohibited from discontinuing service to the Property based upon unpaid bills incurred by or on behalf of Owner, or any

of the Owner's agents.  Further, such utility companies shall maintain any deposits held by the utility companies for the benefit of the Property and shall be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such utility services.  Utility companies are prohibited from discontinuing service while the new receivership accounts are in process of being established.  No insurance company shall be permitted to terminate coverage or refuse coverage for the Property based upon prior unpaid premiums, claims history or because of the appointment of the Receiver pursuant to this Order.  In addition, no insurance company shall be allowed to put in place more stringent payment arrangements during the term of the receivership pursuant to this Order.

      12.    The Receiver is authorized to issue demands, in the name of the receivership estate, upon public utilities that the Receiver determines provide services to the Property and to transfer such services, together with any deposits held by the utility, into the name of the Receiver.

      13.    The Receiver is authorized to issue demands in the name of the receivership upon the U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of such postal boxes as may have been used by Owner, or any of their respective agents for the receipt of rent, income, and other mail related to the Property.  The Receiver is authorized to open all mail addressed to Owner, its agents, employees or representatives, or all persons or entities acting under or in concert with Owner received at the Property.  The Receiver is authorized to make copies of such received mail and then forward the mail to Owner, its agents, employees, or representatives, or all persons or entities acting under or in concert with Owner.

14. The Receiver is authorized to demand deposits, including guest deposits, from available leases, rents or other revenue and other records, compute the amount of deposits collected by Owner or its agents from tenants, if applicable for security, cleaning, hazardous waste or any other purposes, and demand the immediate surrender to the Receiver of such deposits by Owner or its agents who collected them, and to take appropriate action to enforce the turnover of such deposits.

15. The Receiver is authorized to expend sums from the receivership estate, subject to Plaintiff's advance written approval, which, in the Receiver's opinion, are required to make the Property suitable for hotel guests.

16. The Receiver shall prepare on a monthly basis, beginning thirty (30) days after his appointment and for so long as the Property shall remain in his possession or care, reports setting forth all receipts and disbursements, cash flow, changes in the assets in his charge, claims against the assets in his charge, and other relevant operational issues that have occurred during the preceding month. The Receiver is directed to file such reports with the Clerk of this Court. The Receiver shall serve a copy of this report on the attorneys of record for the parties and any other interested parties who request the same.

17. The Receiver shall have no responsibility for filing federal or state income tax returns or federal or state payroll tax returns and shall not be responsible for paying any unpaid federal and state payroll taxes and expenses of Owner. The responsibility for such filings and payments lies exclusively with Owner and its agents, employees, and representatives.

18. Subject to Plaintiff's advance written approval, the Receiver, as managing agent for the Property, is authorized to negotiate, make, enter into, or modify contracts or

agreements affecting any part or all of the Property, and to immediately terminate any existing contract, agreement or instrument that Receiver determines is not commercially reasonable or beneficial to the operation of the Property.

19. Any security or other deposits which any tenants, lessees, or hotel guests have paid to Owner or its agents and which are not paid to the Receiver and over which the Receiver has no control, shall be obligations of Owner and may not be refunded by the Receiver without a prior order of the Court.

20. The Receiver may demand, collect, and receive all rents, revenues, receivables and profits for the Property or any part of it that are owed, unpaid, and uncollected as of the effective date of this Order, or hereafter to become due and in connection therewith may endorse checks payable to Owner, or to the extent related to the Property.

21. Subject to Plaintiff's advance written approval, the Receiver is authorized to place the Property for sale on the market, retain any reputable hotel broker or advertisers or obtain a marketing analysis in connection therewith, and undertake any and all other duties associated with selling the Property, including executing documents necessary for consummation of a sale, provided that such marketing, retention and other contracts relating to such sale and the terms thereof shall be subject to Plaintiff's prior written approval, and with such sale being subject to Court approval.

22. Subject to Plaintiff's advance written approval, the Receiver may institute and prosecute all suits as may be reasonably necessary in the Receiver's judgment to protect the Property, and to defend all such suits and actions as may be instituted against the Receiver.

23. To the extent there are insufficient funds in the receivership estate to cover receivership expenses, the Receiver may borrow from Plaintiff, in Plaintiff's sole and absolute discretion, with or without the necessity of issuing Receiver's Certificates, such funds as may be required by the Receiver to cover operating expenses of the receivership, including but not limited to the Receiver's fees and costs.

24. Subject to the provisions of this order, the Receiver shall hold and retain all money that may come into the Receiver's possession, custody, and control by virtue of his appointment and such funds shall be expended only for the purposes herein authorized and the balance of any funds shall be held by the Receiver pending the further order of this Court or until the sale of the Property under the terms of the Loan Documents.

25. Notwithstanding anything to the contrary in this Order, the Receiver shall not expend or disburse more than $5,000.00 at any one time in excess of the approved operating budget for the Property without Plaintiff's approval, except for emergency or safety repairs to the Property, and nothing in the Court's order shall obligate Plaintiff to lend or disburse any funds or amounts to the Receiver.

26. The Receiver shall maintain adequate insurance over the Property to the same extent and in the same manner as it has heretofore been insured and in compliance with the Loan Documents, or as in the judgment of the Receiver may seem fit and proper, and to cause all presently existing policies to be amended by adding the Receiver and the receivership estate as an additional insured within twenty (20) days of the entry of this Order, with any and all insurance refunds or claims proceeds to be paid to Receiver as part of the receivership assets. If there is either inadequate insurance or insufficient funds

in the receivership estate to procure adequate insurance, the Receiver is directed to immediately take appropriate action to remedy the deficiency and to provide notice to this Court regarding such deficiency. During the period in which the Property is uninsured or underinsured, the Receiver shall not be personally responsible for any claims arising therefore.

27. The Receiver and the parties to this action may, from time to time, on *ex parte* basis or noticed motion on shortened time, petition this Court for instructions with respect to this Order and further orders this Court may hereafter make.

28. No individual or entity may sue the Receiver without first obtaining the permission of this Court.

29. Upon receipt of a copy of a recorded deed following foreclosure sale or upon receipt of an order of this Court so directing, the Receiver shall, without further order of the Court, turn over possession of the Property to the successful purchaser, including without limitation Plaintiff or Plaintiff's assignee. The Receiver and the successful purchaser, with Plaintiff's advance, written consent, may agree to extend the time in which Receiver is to continue to operate the Property in accordance with this Order for up to an additional ninety (90) days.

30. No later than sixty (60) days after the receivership terminates, the Receiver shall file and serve a motion for approval of the Receiver's final report and account and exoneration of the Receiver's bond. The Receiver shall give no less than thirty (30) days advance notice of such motion to all persons of whom the Receiver is aware who have potential claims against receivership property. The motion to approve the final report and account and for discharge of the Receiver shall contain a declaration

or declarations (a) stating what was done during the receivership; (b) certifying the accuracy of the final accounting; (c) stating the basis for the termination of the receivership (such as foreclosure or reinstatement); and (d) stating the basis for an order for the distribution of any surplus or payment of any deficit. In addition, the motion shall contain a summary of the receivership accounting, which shall include (a) the total revenues received; (b) the total expenditures identified and enumerated by major categories; (c) the net amount of any surplus or deficit; and (d) evidence of necessary supporting facts.

31. <u>Bankruptcy</u>. In the event that a bankruptcy case is filed by any Defendant during the pendency of this Receivership, Defendant must give notice of the bankruptcy to this Court, to all parties, and to the Receiver, within 24 hours of the bankruptcy filing. Upon receipt of notice that a bankruptcy has been filed which includes as part of the bankruptcy estate any property ("Bankruptcy Property") which is the subject of this Order: (a) the Receiver shall immediately contact the Plaintiff, and determine whether Plaintiff intends to move in the Bankruptcy Court for an order for both: (1) relief from the automatic stay or motion to dismiss and (2) relief from the Receiver's obligation to turn over the Bankruptcy Property (11 U.S.C. Section 543); (b) If the Plaintiff indicates no intention to file such a motion then the Receiver shall immediately turn over the Bankruptcy Property (to the bankruptcy trustee or debtor-in-possession) and otherwise comply with 11 U.S.C. Section 543; (c) if the Plaintiff notifies the Receiver of its intention to immediately seek relief from the automatic stay or file a motion to dismiss, then the Receiver is authorized to remain in possession and preserve the Bankruptcy Property pending the outcome of those motions pursuant 11 U.S.C. Section 543(a);

provided, however, that the Receiver's authority to preserve the Bankruptcy Property is limited to (i) continuing to collect rents, issues, and profits; (ii) making disbursements which are necessary to preserve and protect the Bankruptcy Property; (iii) maintaining existing contractual relationships but not executing any new leases or other long-term contracts; and (iv) avoiding actions that would effect a material change in circumstances of the Bankruptcy Property. If no motion for relief is filed within 10 days after Plaintiff's receipt of notice of the bankruptcy filing, the Receiver shall immediately turn over the Bankruptcy Property to the trustee in bankruptcy or to the debtor in possession, and shall otherwise comply with 11 U.S.C §543. The Receiver is authorized to retain legal counsel to assist the Receiver with the bankruptcy proceedings. These provisions regarding bankruptcy are applicable only to such defendant that actually files a bankruptcy case and only to Bankruptcy Property; all other parties and any and all Property that is not Bankruptcy Property shall not be affected by the bankruptcy case filing.

32. <u>Effective Date</u>. The effective date of this Order is the date it is filed with the Court Clerk.

ENTERED THIS 7TH DAY OF JANUARY, 2014.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE

-19-

Submitted and Approved by:

WALKER & ASSOCIATES
A Professional Corporation


By: _s/ Samuel I. Roybal_____
   Thomas D. Walker
   Samuel I. Roybal
   500 Marquette NW, Suite 650
   Albuquerque, NM 87102
   (505) 766-9272
   (505) 766-9287 (fax)
Attorneys for Plaintiff

Approved by:

WALCOTT LAW FIRM, P.C.

By: _approved by email 1/6/2014 c.h._____
   Donald Walcott
   Charles Henry
   200 W. Marcy St. Suite 142
   Santa Fe, NM 87501
   (505) 982-9559
   (505) 982-1199
Attorneys for Conquest Santa Fe LLC.